

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

*overrule O-5187*
*where conflicts*

June 2 , 1948

Hon. T. B. Warden
Board of Control
Austin, Texas

Opinion No. V-594

Re: Legality of payment of
contractor's claim for
difference between
amounts paid to meet
actual prevailing wages
and amounts stipulated
in public works construc-
tion contract as prevail-
ing wage rates.

Dear Sir:

Your letter of May 4, 1948 and the file sub-
mitted therewith apprise us of the following facts.

On April 15, 1947, a contract was entered into
by and between W. D. Anderson and the State of Texas,
acting by and through the State Board of Control. Under
the terms of this contract Mr. Anderson agreed to provide
all the materials, including plumbing, heating and elec-
trical wiring, and perform all the work in the construc-
tion of the Marine Laboratory as shown by certain drawings
and specifications which were made a part of the contract.
By Article IX of the contract, it was mutually agreed that
the sum to be paid for said work and material was to be
$77,800.00, subject to various additions and deductions
specifically provided for and not presently controverted.

Article XII of the contract reads as follows:

"ARTICLE XII. The provisions of the pre-
vailing wage law, H.B. No. 54, Chapter 45, Acts
of the Regular Session of the 43rd Legislature,
will be in effect on this contract. Prevailing
wage scales by which the contractor was govern-
ed in bidding upon this work and which will con-
stitute the wage scales of the various classes
of labor upon this work, and upon which the con-
tract price (hereinabove stated) is predicated,
are as follows:

Classification   Per Hour   Classification   Per Hour

AS SHOWN IN SPECIFICATIONS FOR MARINE LABORATORY

"The Contractor shall forfeit as a penalty
to the State, ten ($10.00) dollars for each la-
borer, workman or mechanic employed, for each
calendar day, or portion thereof, such laborer,
workman or mechanic is paid less than the said
stipulated rates for any work done under said
contract, by him or by any sub-contractor under
him."

The wage rates embodied in the specifications
were determined by the Board of Control to be the general
prevailing rate of wages in the Rockport area, where the
work was to be performed, for each craft or type of work-
man or mechanic needed to execute the contract; and were
the same rates which were specified in the call for bids
on the contract.

In your letter of May 4, 1948, you state that
"shortly before this contract was entered into inquiry
concerning wage rates was made of the Labor Commissioner
and we received a mimeographed sheet (not certified) bear-
ing the purported wage rates for the Rockport area." You
further state that on March 6, 1948 (approximately one year
after the contract was made) the Department of Labor, act-
ing at the request of the attorney for W. D. Anderson and
Company, has advised you that the information previously
furnished on prevailing wage rates was erroneous and that
they have "good and sufficient evidence confirming the ac-
tual wage rate in effect in (the Rockport) . . . area in
March 1947." The Marine Laboratory has been completed, and
W. D. Anderson is claiming that the final estimate of the
amount to be paid under the contract should include the
sum of $3481.05, $3200.82 of such amount being the differ-
ence between the actual prevailing wage rates which he paid
and the wage rates stipulated in the specifications as the
generally prevailing wage rates. One hundred twenty-eight
dollars and three cents is claimed as the resulting addi-
tional amount paid for Social Security and Unemployment Com-
pensation Insurance and $152.20 as the resulting additional
amount paid for Workmens Compensation and Public Liability
Insurance.

This claim is based on the proposition that Arti-
cle XII of the contract (previously quoted) furnished an

erroneous wage scale, that the contractor under the law and in accordance with his contract was required to pay the actual prevailing wage scale, and that this mutual mistake of fact warrants a reformation of the contract to cover the sums so expended. Opinion No. O-5187 of the Attorney General supports this proposition and allowed payment of a similar claim in substantially the same fact situation.

You point out that "should this claim be paid, then we must admit that any contract drawn incorporating House Bill 54 is always subject to the contingency that an error arose with respect to the prevailing rate of per diem wages. . ." and the further possibility that in many instances "if the claim is allowed, . . . the contract may exceed the appropriation for such work."

Pursuant to your request we have undertaken a reexamination of the provisions of the statutes relating to the rate of wages of persons employed in the construction of public works. The provisions of H.B. No. 54, Ch. 45, Acts of the Regular Session of the 43rd Legislature are carried as Art. 5159a, V. C. S., and Art. 1581a, V. P. C. In the following excerpt from Article 5159a we have underscored the provisions which we regard as determinative of the present question:

"Sec. 1. Not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the work is performed, and not less than the general prevailing rate of per diem wages for legal holiday and overtime work, shall be paid to all laborers, workmen and mechanics employed by or on behalf of the State of Texas, or by or on behalf of any county, city and county city, town, district or other political subdivision of the State, engaged in the construction of public works, exclusive of maintenance work. Laborers, workmen, and mechanics employed by contractors or subcontractors in the execution of any contract or contracts for public works with the State, or any officer or public body thereof, or in the execution of any contract or contracts for public works, with any county, city and county, city, town, district or other political subdivision of this State, or any officer or public body thereof, shall be deemed to be employed upon public works."

"Sec. 2.  The public body awarding any contract for public work on behalf of the State, or on behalf of any county, city and county, city, town, district or other political subdivision thereof, or otherwise undertaking any public work, shall ascertain the general prevailing rate of per diem wages in the locality in which the work is to be performed for each craft or type of workman or mechanic needed to execute the contract, and shall specify in the call for bids for said contract, and in the contract itself, what the general prevailing rate of per diem wages in the said locality is for each craft or type of workman needed to execute the contract, also the prevailing rate for legal holiday and overtime work, and it shall be mandatory upon the contractor to whom the contract is awarded, and upon any subcontractor under him, to pay not less than the said specified rates to all laborers, workmen and mechanics employed by them in the execution of the contract.  The contractor shall forfeit as a penalty to the State, county, city and county, city, town, district or other political subdivision on whose behalf the contract is made or awarded, Ten Dollars ($10.00) for each laborer, workman or mechanic employed, for each calendar day, or portion thereof, such laborer, workman or mechanic is paid less than the said stipulated rates for any work done under said contract by him, or by any subcontractor under him, and the said public body awarding the contract shall cause to be inserted in the contract a stipulation to this effect. . . .

"Sec. 3.  The contractor and each subcontractor shall keep, or cause to be kept, an accurate record showing the names and occupations of all laborers, workmen and mechanics employed by him, in connection with the said public work, and showing also the actual per diem wages paid to each of such workers, . . .

"Sec. 4.  Any construction or repair work done under contract, and paid for in whole or in part out of public funds, . . . shall be held to be 'public works' within the meaning of this Act. The term 'locality in which the work is performed' shall be held to mean the county, city and

county, city, town, district or other political subdivision of this State in which the building, highway, road, excavation, or other structure, project, development or improvement is situated in all cases in which the contract is awarded by the State, or any public body thereof, and shall be held to mean the limits of the county, city and county, city, town, district or other political subdivisions on whose behalf the contract is awarded in all other cases. The term 'general prevailing rate of per diem wages' shall be the rate determined upon as such rate by the public body awarding the contract, or authorizing the work, whose decision in the matter shall be final. Nothing in this Act, however, shall be construed to prohibit the payment to any laborer, workman or mechanic employed on any public work as aforesaid of more than the said general prevailing rate of wages."

Applying the directions of the statute to this case, we find that the Board of Control ascertained the "general prevailing rate" of per diem wages in the locality in which the work was to be performed for each type of workman needed to execute the contract. This determination of the prevailing wage rate was a power and a duty conferred exclusively in this case upon the Board of Control inasmuch as it was the "public body" awarding the contract. Southern Prison Co. v. Rennels, 110 S.W. 2d 606. The statute does not prescribe any particular method for such ascertainment, and specifically provides that the "general prevailing wage rate" is the "rate determined upon as such rate by the public body awarding the contract . . . whose decision in the matter . . . (is) final." This rate was properly specified in the call for bids for the contract and in the contract itself. There was thereby imposed upon the contractor an obligation to pay "not less than the said specified rates to all laborers, workmen and mechanics employed by him in the execution of the contract." It is thus apparent that Article 5159a requires payment of a minimum wage rate, but that there is no inhibition against paying a greater wage than the rates specified. In the event of nonperformance of this provision requiring payment of the stipulated minimum wage rates, W. D. Anderson would have forfeited to the State "Ten Dollars ($10.00) for each . . . workman . . . employed, for each calendar day or portion thereof,

such . . . workman . . . (was) paid less than the said
stipulated rates. . . ." This is the only civil penalty
provided for the violation of the only obligation impos-
ed upon the contractor by this provision of the law, and
therefore the only obligation imposed upon Mr. Anderson
by its incorporation in A ticle XII of the contract was
an obligation to pay not less than the wage rates stipu-
lated by the Board of Control. There is nothing in Arti-
cle 5159a nor in the contract which even suggests that
the other party to the contract agreed to pay any addi-
tional amount that the contractor might have to pay to
the laborers he employed. It is a well known fact, and
certainly one that should be considered by any reasonably
prudent contractor in making his bid, that wages vary and
that for any number of reasons a contractor may desire or
be forced to pay more than the stipulated minimum rates.
Several sections of Article 5159a anticipate such vari-
ances. Section 3 requires the contractor to keep a rec-
ord of the "actual per diem wages paid" as contradistin-
guished from the stipulated general prevailing rates;
and the concluding sentence of Section 4 expressly pro-
vides that "Nothing in this act. . .shall be construed to
prohibit the payment to any . . . workman . . . of more
than the said general prevailing rate of wages."

The purpose of Article 5159a is to "protect
workmen . . . from being required, if they accept employ-
ment, to work for less than the prevailing wages paid
. . . for the same class and character of work." South-
ern Prison Co. v. Rennels, 110 S.W. 2d 606, 609. See al-
so the emergency clause of H.B. 54, supra, expressly de-
claring the need for an adequate law to protect workmen
on public works and prevent contractors from taking ad-
vantage of industrial and economic conditions to reduce
wage levels. We think it apparent that the incorporation
in the contract of the statute effectuating the determin-
ed minimum wage rates in no wise constitutes a covenant
by the contracting public body to pay the contractor any
additional amount in the event actual wages exceed the
stipulated wage rates. Many other states have similar
statutes relating to the rate of wages of persons employ-
ed on public works. Various problems have arisen in con-
nection with such statutes (see the following annotations:
50 A.L.R. 1480; 81 A.L.R. 349; 132 A.L.R. 1297; 144 A.L.R.
1035); but in none of the reported cases has it been as-
serted that their provisions gave what would be in effect
a guarantee to the contractor of the rate of wages he would
have to pay to secure the labor necessary to complete the
contract.

Being clearly at variance with the purpose of Article 5159a, and not being covered by any special provision of the contract, we are of the opinion that a payment of the additional amount here claimed would violate the provisions of Article III, § 53 of the Constitution of the State of Texas, which reads, in part, as follows:

"The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a . . . contractor . . . after service has been rendered, or a contract entered into and performed in whole or in part; . . ."

and also that part of Section 44 of the same article which provides:

"The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; . . ."

For all these reasons the claim for additional amounts expended for insurance must likewise be denied, and Opinion O-5187 is hereby overruled in so far as it is in conflict with this opinion.

### SUMMARY

Where the general prevailing wage rates were determined by the public body awarding public works construction contract and embodied in the contract as the minimum wages to be paid by the contractor for work done under the contract, contractor's claim on completion of work for a sum additional to the agreed contract price, in the amount actual prevailing wages rates exceeded rates stipulated as general prevailing wage rates, cannot

be allowed; nor can the claim for resulting
additional insurance coverage costs.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Marietta Creel*
Mrs. Marietta Creel
Assistant

MC/JCP/wb

APPROVED:

*Price Daniel*
ATTORNEY GENERAL